**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| KEYSTONE ASSOCIATES LLC, a Utah limited liability company; CABLE MOUNTAIN PARTNERS LLC a Utah limited liability company, | )<br>)<br>)<br>)<br>) |
| Plaintiffs, | ) C.A. No. 18- <br>) |
| v. | ) **JURY TRIAL DEMANDED**<br>) |
| BENJAMIN FULTON, an individual; ELKHORN CAPITAL GROUP, LLC, a Delaware limited liability company, | )<br>)<br>)<br>) |
| Defendants. | ) |

## COMPLAINT

Plaintiffs Keystone Associates LLC ("Keystone") and Cable Mountain Partners LLC ("Cable Mountain") (together as "Plaintiffs") hereby complain against defendants Benjamin Fulton ("Fulton") and Elkhorn Capital Group, LLC ("Elkhorn") (together as "Defendants") as follows:

### PARTIES, JURISDICTION, & VENUE

1. Plaintiff Keystone is a Utah limited liability company.

2. Plaintiff Cable Mountain is a Utah limited liability company.

3. Defendant Elkhorn is a Delaware limited liability company with its principal place of business in Illinois.

4. Defendant Fulton was, at all relevant times, the founder, manager and CEO of Elkhorn.

5. Plaintiffs assert claims arising under the Securities Exchange Act of 1934 and SEC Rule 10b-5. This Court has subject matter jurisdiction over these claims pursuant to section

27 of the Securities Exchange Act of 1934 (*see* 15 U.S.C. § 78aa) and 28 U.S.C. § 1331. Plaintiffs also assert state law claims. This Court has supplemental jurisdiction over these claims pursuant to 28 U.S.C. § 1367.

6. Jurisdiction is proper over Elkhorn because it is a Delaware limited liability company.

7. Jurisdiction is proper over Fulton because he was, at all relevant times, the founder, manager and CEO of Elkhorn and acted as its agent. Specifically, the acts and misrepresentations of Elkhorn and Fulton were done with the permission, consent, knowledge, and active inducement on the part of the other. These misrepresentations, as detailed below, form the basis of Plaintiffs' claims.

8. In addition, Fulton acted as the alter ego of Elkhorn. Fulton and Elkhorn acted as single economic entity to commit the fraud described below. On information and belief, Fulton had a large financial interested in Elkhorn such that the investments he solicited from Plaintiffs directly benefitted him. On information and belief, Fulton knew that investors would not place their money with an individual, so Fulton created Elkhorn to aid in his fraudulent scheme.

9. Venue is proper in this District pursuant to § 27 of the Securities Exchange Act of 1934 (*see* 15 U.S.C. § 78aa), and 28 U.S.C. § 1391 in that Defendants are subject to personal jurisdiction in this District.

## **GENERAL ALLEGATIONS**

**A.    Fulton and Elkhorn**

10.    Fulton was an early adopter and advocate of the exchange-traded fund ("ETF") and has worked in the investment industry for over 30 years.  ETFs are index-based products that allow investors to buy or sell shares of entire portfolios of stock in a single security.

11.    Fulton was a leader of Invesco PowerShares Capital Management ("PowerShares").  He became the managing director of PowerShares' global ETF business in 2009.  When Fulton left PowerShares in 2013, it managed nearly $80 billion in assets.

12.    After leaving PowerShares, Fulton founded and became the CEO of Elkhorn in 2013.  Elkhorn held itself out as a leading independent investment solutions firm pioneering innovative research-based financial products in a wide array of investment structures.

13.    Elkhorn had a strategic partnership with Barclays Capital Inc. ("Barclays") and advertised this partnership prominently on its website.

**B.    Plaintiffs' Interest in Elkhorn**

14.    Attracted in part by Fulton's experiences in the ETF industry, Plaintiffs explored opportunities to invest in Elkhorn.

15.    On February 6, 2016, John Lunt, a manager of Keystone, sent Fulton an email to learn more details about Elkhorn in order to consider making an investment.

16.    In response to Lunt's questions about arrangements with other business associates, Fulton highlighted Elkhorn's relationship with Barclays.  Fulton said that Barclays was providing "a total of $5,000,000 in capital," with $3,000,000 being a 5-year interest only loan and the remainder being an annual marketing agreement for $500,000 every June through 2018.

17. Under this marketing agreement, Elkhorn would sell Exchange Traded Products ("ETPs") on behalf of Barclays.

18. Elkhorn's purported relationship with Barclays was a critical factor in Plaintiffs' decision to invest in Elkhorn. Elkhorn's website touted its "strategic partnership" with Barclays to promote the appearance of financial stability and credibility. Barclays itself claimed that Elkhorn was "very complementary to Barclays' business, and very aligned to investors' needs."

19. Plaintiffs trusted Barclays' reputation. Barclays' confidence in having Elkhorn sell ETPs on their behalf gave Plaintiffs the confidence to invest in Elkhorn. Plaintiffs thus reasonably relied on Elkhorn's representation in their decision to invest.

**C.     Plaintiffs' Investment in Elkhorn**

20. On or about February 18, 2016, Keystone made its first investment in Elkhorn. Keystone invested $1,000,000 and received 1,110 Class A membership units of Elkhorn. This equity interest was later assigned to Cable Mountain.

21. On or about June 29, 2016, Cable Mountain entered into an agreement with Elkhorn to provide a loan of $1,000,000 to Elkhorn in exchange for a promissory note. Cable Mountain had the option to convert this promissory note into equity of Elkhorn.

22. On or about January 30, 2017, Keystone provided Elkhorn with a loan of $500,000 in exchange for a convertible promissory note. Under this promissory note, Keystone had the option to convert all or any portion of the principal amount and accrued interest of the loan into equity of Elkhorn.

23. The transactions of February 18, 2016, June 29, 2016, and January 30, 2017 all included the sale of non-registered securities.

D.   **Elkhorn's Misrepresentation and Insolvency**

24.   Fulton and Elkhorn misrepresented Elkhorn's relationship with Barclays in order to raise capital.  Contrary to their representation, the annual $500,000 marketing payment was contingent upon Elkhorn selling $100 million of Barclays' products annually—it was not guaranteed money.

25.   Fulton's statements to Plaintiffs omitted this key contingent requirement in the Barclays agreement.

26.   Further, when Fulton sent the February 6, 2016 email, he knew that Elkhorn was not selling any significant amount of Barclays products and did not have any realistic possibility of selling $100 million of Barclays products annually.  Fulton therefore knew that Elkhorn would not receive the remaining $500,000 installments.  Fulton knowingly omitted this material information with the intention of misleading Plaintiffs.

27.   Elkhorn's failure to sell Barclays' products was part of a larger problem with its distribution method.  In addition to failing to sell Barclays products, Elkhorn was unable to sell a significant number of other ETFs.  Due to its failed distribution, Elkhorn was largely unsuccessful.

28.   Elkhorn is now insolvent and has no assets of significance.  Plaintiffs' equity and debt are essentially worthless.

29.   Plaintiffs discovered that the statements made by Fulton and Elkhorn were false in or about April 2017.

## FIRST CAUSE OF ACTION
**(Securities Fraud in Violation of Section 10(b) of the Securities Exchange Act of 1934 and SEC Rule 10b-5)**

30. Plaintiffs incorporate and reallege all paragraphs as though fully set forth herein.

31. Fulton and Elkhorn misrepresented a material fact in connection with the sale of securities by stating in writing to Plaintiffs that Barclays would provide a total of $5,000,000 in capital, despite this amount being contingent upon events that Defendants knew would not occur. Fulton and Elkhorn also made a material omission in connection with the sale of securities by failing to inform Plaintiffs that the marketing agreement between Elkhorn and Barclays was contingent upon Elkhorn selling $100 million annually of Barclays ETPs and that Elkhorn did not have any realistic possibility of satisfying this requirement.

32. Plaintiffs reasonably relied on Defendants' material misrepresentations and omissions in their purchase of securities from Elkhorn. Had Defendants disclosed the nature of the contingencies with Barclays, Plaintiffs would have realized the additional money from Barclays would not be forthcoming and would not have invested in Elkhorn.

33. Defendants' misrepresentations and omissions caused Plaintiffs to purchase securities that it would not otherwise have purchased and to pay an inflated price for those securities, resulting in damages in an amount of not less than $2,500,000.

34. Defendants' acted with an intent to deceive, as they knew their representations were false, knew that they were omitting material facts, and knew that such misleading statements would induce plaintiffs to invest in Elkhorn.

## SECOND CAUSE OF ACTION
### (Common Law Fraud)

35. Plaintiffs incorporate and reallege all paragraphs as though fully set forth herein.

36. Fulton and Elkhorn made a knowingly false statement when stating in writing that Barclays would provide a total of $5,000,000 in capital, despite this amount being contingent upon events that Defendants knew would not occur.  Fulton and Elkhorn also made a material omission by failing to inform Plaintiffs that the marketing agreement between Elkhorn and Barclays was contingent upon Elkhorn selling $100 million annually of Barclays ETPs and that Elkhorn did not have any realistic possibility of satisfying this requirement.

37. Fulton and Elkhorn intended to induce Plaintiffs with these statements and omissions, and Plaintiffs did reasonably rely on the statements and omissions.

38. Defendants' misrepresentations and omissions caused Plaintiffs to purchase securities, including convertible debt, that it would not otherwise have purchased and to pay an inflated price for those securities, resulting in damages in an amount of not less than $2,500,000.

## THIRD CAUSE OF ACTION
### (Negligent Misrepresentation)

39. Plaintiffs incorporate and reallege all paragraphs as though fully set forth herein.

40. Defendants had a pecuniary duty to provide accurate information in connection with the sale of securities.

41. Defendants provided false information in connection with the sale of securities by stating in writing to Plaintiffs that Barclays would provide a total of $5,000,000 in capital, despite this amount being contingent upon events that Defendants knew would not occur. Defendants also made a material omission in connection with the sale of securities by failing to inform Plaintiffs that the marketing agreement between Elkhorn and Barclays was contingent

upon Elkhorn selling $100 million annually of Barclays ETPs and that Elkhorn did not have any realistic possibility of satisfying this requirement.

42. Fulton and Elkhorn failed to exercise reasonable care in providing the false information.

43. Defendants were in a better position than Plaintiffs to know the true facts, as the representations related to the relationship and agreement between Elkhorn and Barclays.

44. As the direct recipient of the money, Elkhorn had a financial interest in obtaining an investment from Plaintiffs. As the founder and CEO of Elkhorn, Fulton had a financial interest in Elkhorn receiving the investment.

45. Plaintiffs justifiably relied on the representations about the partnership between Elkhorn and Barclays that were made by Defendants when making the decision to invest in Elkhorn. Defendants should have reasonably foreseen that Plaintiffs were likely to rely upon the misrepresentations. The Defendants' false information caused Plaintiffs to purchase securities, including convertible debt, that it would not otherwise have purchased and to pay an inflated price for those securities, resulting in damages in an amount of not less than $2,500,000.

## PRAYER FOR RELIEF

**WHEREFORE,** Keystone and Cable Mountain pray for judgment against Fulton and Elkhorn as follows:

A. For damages, including punitive, in an amount to be fully determined at trial;

B. For reasonable costs and attorneys' fees; and

C. For such other relief as the Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Keystone and Cable Mountain demand a trial by jury of all issues so triable.

| | |
|---|---|
| OF COUNSEL | POTTER ANDERSON & CORROON LLP |
| | By: */s/ Jonathan A. Choa* |
| David J. Jordan | Timothy R. Dudderar (#3890) |
| Michael R. Menssen | Jonathan A. Choa (#5319) |
| STOEL RIVES LLP | Hercules Plaza |
| 201 S. Main Street, Suite 1100 | P.O. Box 951 |
| Salt Lake City, UT 84111 | Wilmington, DE 19899-0951 |
| (801) 328-3131 | (302) 984-6000 |
| | *Attorneys for Plaintiffs* |

Dated: August 13, 2018
5892111