## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| KEYSTONE ASSOCIATES LLC, a Utah limited liability company; CABLE MOUNTAIN PARTNERS LLC a Utah limited liability company, | ) ) ) ) | |
| | ) | |
| Plaintiffs, | ) | C.A. No.  18-1235-CFC |
| | ) | |
| v. | ) | **JURY TRIAL DEMANDED** |
| | ) | |
| BENJAMIN FULTON, an individual; ELKHORN CAPITAL GROUP, LLC, a Delaware limited liability company, | ) ) ) | |
| | ) | |
| Defendants. | ) | |

## PLAINTIFFS' OPPOSITION TO BENJAMIN FULTON AND ELKHORN CAPITAL GROUP, LLC's MOTION DISMISS

OF COUNSEL:

David J. Jordan
Michael R. Menssen
STOEL RIVES LLP
201 S. Main Street, Suite 1100
Salt Lake City, UT 84111
(801) 328-3131

Timothy R. Dudderar (# 3890)
Jonathan A. Choa (#5319)
POTTER ANDERSON & CORROON LLP
Hercules Plaza
P.O. Box 951
Wilmington, DE  19899-0951
(302) 984-6000
tdudderar@potteranderson.com
jchoa@potteranderson.com

*Attorneys for Plaintiffs*

Dated:  December 10, 2018

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................................. ii

I.      NATURE AND STAGE OF PROCEEDINGS ........................................................... 1

II.     SUMMARY OF ARGUMENT ................................................................................... 1

III.    STATEMENT OF FACTS .......................................................................................... 2

IV.     ARGUMENT ............................................................................................................... 3

    A.      Legal Standards ............................................................................................... 3

    B.      Plaintiffs Have Standing for All Three Transactions ...................................... 5

        1.      Plaintiffs Have Standing for the First Transaction ................................... 5

        2.      Cable Mountain Has Standing for the Second Transaction ....................... 8

    C.      Plaintiffs Adequately Allege a False Statement .............................................. 9

    D.      Plaintiffs Adequately Allege Loss Causation ................................................ 10

    E.      Plaintiffs Adequately Allege Reliance ........................................................... 13

    F.      Plaintiffs Adequately Allege Scienter ........................................................... 16

    G.      Plaintiffs Adequately Allege Negligent Misrepresentation ........................... 18

    H.      The Claims Are Not Time-Barred ................................................................. 19

V.      CONCLUSION .......................................................................................................... 20

# TABLE OF AUTHORITIES

**Page**

**Cases**

*AES Corp. v. Dow Chem. Co.*,
  325 F.3d 174 (3d Cir. 2003)......................................................................................13

*AmeriFirst Bank v. Bomar*,
  757 F.Supp. 1365 (S.D.Fla. 1991) ...............................................................................7

*Arcelik A.S v. E. I. du Pont De Nemours & Co.*,
  No. CV 15-961-LPS, 2018 WL 1401327 (D. Del. Mar. 20, 2018) ...............................4

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009).....................................................................................................3

*Berckeley Inv. Grp., Ltd. v. Colkitt*,
  455 F.3d 195 (3d Cir. 2006).......................................................................................10

*Blau v. Mission Corp.*,
  212 F.2d 77 (2d Cir. 1954)...........................................................................................6

*Blue Chip Stamps v. Manor Drug Stores*,
  421 U.S. 723 (1975)..................................................................................................7, 8

*Brown v. Earthboard Sports USA, Inc.*,
  481 F.3d 901 (6th Cir. 2007) .....................................................................................11

*In re Burlington Coat Factory Sec. Litig.*,
  114 F.3d 1410 (3d Cir. 1997)........................................................................................3

*Corp. Prop. Assocs. 14 Inc. v. CHR Holding Corp.*,
  No. CIV.A 3231-VCS, 2008 WL 963048 (Del. Ch. Apr. 10, 2008) ..........................19

*EP Medsystems, Inc. v. EchoCath, Inc.*,
  235 F.3d 865 (3d Cir. 2000)..................................................................................11, 12

*Farey-Jones v. Buckingham*,
  132 F. Supp. 2d 92 (E.D.N.Y. 2001) ............................................................................7

*Glaser v. Enzo Biochem, Inc.*,
  464 F.3d 474 (4th Cir. 2006) ........................................................................................6

*Graboff v. The Collern Firm*,
  2010 WL 4456923 (E.D. Pa. Nov. 8, 2010) .................................................................4

# TABLE OF AUTHORITIES
(continued)

**Page**

*Int'l Controls Corp. v. Vesco*,
    490 F.2d 1334 (2d Cir. 1974)..................................................................................6

*In re Intel Corp. Microprocessor Antitrust Litig.*,
    496 F. Supp. 2d 404 (D. Del. 2007).........................................................................4

*Key Equity Inv'rs, Inc. v. Sel-Leb Mktg. Inc.*,
    246 F. App'x 780 (3d Cir. 2007) ....................................................................16, 18

*Kost v. Kozakiewicz*,
    1 F.3d 176 (3d Cir. 1993).........................................................................................3

*Livid Holdings Ltd. v. Salomon Smith Barney, Inc.*,
    416 F.3d 940 (9th Cir. 2005) .................................................................................11

*Lowry v. Baltimore & Ohio R. Co.*,
    707 F.2d 721 (3d Cir. 1983).....................................................................................7

*Maio v. Aetna, Inc.*,
    221 F.3d 472 (3d Cir. 2000).....................................................................................3

*McCabe v. Ernst & Young, LLP.*,
    494 F.3d 418 (3d Cir. 2007).......................................................................10, 11, 12

*McKowan Lowe & Co. v. Jasmine, Ltd.*,
    231 F. App'x 216 (3d Cir. 2007) .............................................................................6

*Merck & Co. v. Reynolds*,
    559 U.S. 633 (2010)........................................................................................19, 20

*Meyer v. Ward*,
    No. 13 C 3303, 2016 WL 5390953 (N.D. Ill. Sept. 27, 2016)...............................11

*Moore v. Smith*,
    2007 UT App 101, 158 P.3d 562 ......................................................................5, 18

*Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
    259 F.3d 154 (3d Cir. 2001)...................................................................................10

*Oran v. Stafford*,
    226 F.3d 275 (3d Cir. 2000).....................................................................................9

*Rathborne v. Rathborne*,
    683 F.2d 914 (5th Cir. 1982) ...................................................................................6

# TABLE OF AUTHORITIES
(continued)

**Page**

*Resolve Funding, LLC v. Buckley Prop. Servs., LLC*,
 No. CV S17C-09-003 RFS, 2018 WL 776417 (Del. Super. Ct. Feb. 7, 2018).......................18

*Robinson v. Tripco Inv., Inc.*,
 2000 UT App 200, 21 P.3d 219 ....................................................................................4, 15

*Schmidt v. Skolas*,
 770 F.3d 241 (3d Cir. 2014)........................................................................................20

*Smith v. Ayres*,
 977 F.2d 946 (5th Cir. 1992) ........................................................................................8

*Stoneridge Inv. Partners, LLC v. Sci.-Atlanta*,
 552 U.S. 148 (2008)..................................................................................................3, 9

*Straub v. Vaisman and Co., Inc.*,
 540 F.2d 591 (3d Cir. 1976)........................................................................................13

*Tekstrom, Inc. v. Savla*,
 No. CIV.A. 05A-12-006JTV, 2006 WL 2338050 (Del. Super. Ct. July 31,
 2006), aff'd, 918 A.2d 1171 (Del. 2007) ..................................................................15

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
 551 U.S. 308 (2007)....................................................................................................16

*Thibault v. Del. Tech. & Cmty. Coll.*,
 C. A. No. 11-1080-MPT, 2012 WL 2073847 (D. Del. June 8, 2012) .......................3

*TL of Fla., Inc. v. Terex Corp.*,
 54 F. Supp. 3d 320 (D. Del. 2014)..............................................................................20

*Vichi v. Koninklijke Philips Elecs., N.V.*,
 85 A.3d 725 (Del. Ch. 2014).......................................................................................19

*WPP Luxembourg Gamma Three Sarl v. Spot Runner, Inc.*,
 655 F.3d 1039 (9th Cir. 2011) .....................................................................................11

*Zazzali v. Hirschler Fleischer, P.C.*,
 482 B.R. 495 (D. Del. 2012)..........................................................................................4

## Statutes

15 U.S.C. § 78u–4(b)(2) ..............................................................................................16

26 U.S.C. § 351................................................................................................................6

**TABLE OF AUTHORITIES**
(continued)

**Page**

Exchange Act of 1934 § 10(b) ...........................................................................................1, 3, 6, 11

**Rules**

Rule 10b-5............................................................................................................... passim

Rule 12(b)(6)...........................................................................................................................3

## I.      NATURE AND STAGE OF PROCEEDINGS

Plaintiffs Keystone Associates LLC ("Keystone") and Cable Mountain Partners LLC ("Cable Mountain") (together, "Plaintiffs") filed an amended complaint on November 5, 2018. The complaint asserted claims for securities fraud under Section 10(b) of the Securities Exchange Act of 1934 and SEC Rule 10b-5, common law fraud and fraudulent inducement, and negligent misrepresentation.  Defendants filed a motion to dismiss on November 19, 2018. Plaintiffs now file their opposition to the motion to dismiss.

## II.      SUMMARY OF ARGUMENT

1.      Plaintiffs purchased securities from Defendants in three separate transactions. Plaintiffs have standing to assert claims for all three.  The first purchase was made by Keystone. Keystone later transferred that equity to its wholly owned subsidiary, Cable Mountain, in a book transfer.  Courts routinely hold that the transfer of stock from a parent to a wholly-owned subsidiary does not amount to a real transfer or sale and does not constitute a disposition of the parent's stock.  Keystone retains standing to pursue its damages from the first transaction.  The second transaction was made through Cable Mountain.  The managers of Cable Mountain are Larry and John Lunt, the same individuals to whom Defendants made the misrepresentations. Defendants knew that Plaintiffs were relying on the past representations made to them when entering into the second transaction.  The third transaction was made through Keystone. Defendants do not dispute that Keystone has standing for the third transaction.

2.      Plaintiffs adequately allege both false statements and misleading statements by Defendants.  Defendants misrepresented a material fact by stating that Barclays would provide "a total of $5,000,000 in capital," with $3,000,000 being a 5-year loan and the remainder being an annual marketing agreement for $500,000.  That statement was false.  Defendants knew that Barclays was not going to provide a total of $5,000,000 in capital.  Further, a duty to disclose

arises when there has been an inaccurate, incomplete or misleading prior disclosure.  Defendants made a misleading and material omission by failing to inform Plaintiffs that the marketing agreement was contingent upon Elkhorn selling $100 million annually of Barclays affiliated products and that Elkhorn did not have any realistic possibility of satisfying that requirement.

3.      Plaintiffs adequately allege loss causation.  Plaintiffs allege that Defendants misrepresented the very facts that were a substantial factor in causing Plaintiffs' economic loss.

4.      Plaintiffs adequately allege reliance.  Plaintiffs allege facts demonstrating (i) a causal nexus between the misrepresentation and their injury, and (ii) that they exercised the diligence that a reasonable person under all of the circumstances would exercise to protect his own interests.  Specifically, Plaintiffs received written statements from Elkhorn's CEO and CFO sent personally to them confirming the representations at issue.

5.      Plaintiffs adequately allege scienter.  Plaintiffs allege facts creating an inference of scienter at least as compelling as any opposing inference of nonfraudulent intent.  Among other facts, Defendants intentionally provided misleading information by including the facts favorable to them without including the facts unfavorable to them.

6.      Plaintiffs adequately allege all of the elements for negligent misrepresentation.

7.      Plaintiffs' claims are not time barred.  Plaintiffs allege that the representations were not discovered to be false and misleading until May 2, 2017.  The complaint was filed on August 13, 2018.  That is within the two year statute of limitations.  Further, the allegations do not show as a matter of law that Plaintiffs should have discovered the misrepresentation earlier.

## III.     STATEMENT OF FACTS

The Lunts, through their family owned entities of Keystone and Cable Mountain, invested $2.5 million in Elkhorn in three transaction.  Am. Compl. ¶¶ 2-3, 22, 24, 26.  Keystone is solely owned by Larry Lunt and his wife, and Cable Mountain is solely owned by Keystone.

Am. Compl. ¶¶ 2-3.  Plaintiffs made all three investments relying on false and misleading statements made directly to them via email by Elkhorn's CEO, Ben Fulton, and its CFO.  Am. Compl. ¶¶ 17-19, 21.  Because those statements were false, Elkhorn is now insolvent and Plaintiffs' equity and debt are essentially worthless.  Am. Compl. ¶¶ 34-35.

## IV.  ARGUMENT

### A.  Legal Standards

To survive a Rule 12(b)(6) challenge, a complaint must only "contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'"  *Thibault v. Del. Tech. & Cmty. Coll.*, C. A. No. 11-1080-MPT, 2012 WL 2073847, at *1 (D. Del. June 8, 2012) (*quoting Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009)).  "The purpose of a Rule 12(b)(6) motion to dismiss is to test the sufficiency of a complaint, not to resolve disputed facts or decide the merits of the case."  *Thibault*, 2012 WL 2073847, at *1 (citing *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993)).  The Court must "accept as true all material allegations of the complaint." *Id.*  "The issue is not whether a plaintiff will ultimately prevail, but whether the claimant is entitled to offer evidence to support the claims."  *Id.* (quoting *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1420 (3d Cir. 1997).  "A motion to dismiss may be granted only if, after 'accepting all well-plead allegations in the complaint as true, and viewing them in the light most favorable to the plaintiff, plaintiff is not entitled to relief.'"  *Id.* (*quoting Maio v. Aetna, Inc.*, 221 F.3d 472, 481–82 (3d Cir. 2000).

To state a private action under Section 10(b) of the Securities Exchange Act and Rule 10b-5, a plaintiff must prove (1) a material misrepresentation or omission by the defendant; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance upon the misrepresentation or omission; (5) economic loss; and (6) loss causation."  *Stoneridge Inv. Partners, LLC v. Sci.-Atlanta*, 552 U.S. 148, 157 (2008).

3

Plaintiffs do not concede that Delaware law applies for the state law claims.  Elkhorn has its principal place of business in Illinois.  Plaintiffs are located in Utah.  Many of the Agreements between Plaintiffs and Defendants related to the purchase of securities have a Utah choice of law provision.  Further, Plaintiffs do not concede that there are no conflicts between Delaware law and Utah law.  For example, the law on reliance and the law on negligent misrepresentation appear to be different, although Plaintiff should prevail under either forum's laws.  As the complaint does not contain allegations sufficient to determine the choice of law issue, this decision should be deferred until there is a more-developed record.  *See Arcelik A.S v. E. I. du Pont De Nemours & Co.,* No. CV 15-961-LPS, 2018 WL 1401327, at *9 (D. Del. Mar. 20, 2018) (explaining that without a developed record, "the Court does not find it appropriate at the motion to dismiss stage of this case to undertake a choice of law analysis").[1]

The elements of fraud in Utah are "(1) a representation; (2) concerning a presently existing material fact; (3) which was false; (4) which the representor either (a) knew to be false, or (b) made recklessly, knowing that he [or she] had insufficient knowledge on which to base such representation; (5) for the purpose of inducing the other party to act upon it; (6) that the other party, acting reasonably and in ignorance of its falsity; (7) did in fact rely upon it; (8) and was thereby induced to act; (9) to his [or her] injury and damage."  *Robinson v. Tripco Inv., Inc.*, 2000 UT App 200, ¶ 12, 21 P.3d 219, 223.

---

[1] *See also Zazzali v. Hirschler Fleischer, P.C.*, 482 B.R. 495, 517 (D. Del. 2012) ("The Court will defer making a choice of law determination until there is development of a more complete factual record.") (citing *Graboff v. The Collern Firm*, 2010 WL 4456923, at *8 (E.D. Pa. Nov. 8, 2010) ("Due to the complexity of this analysis, when confronted with a choice of law issue at the motion to dismiss stage, courts within the Third Circuit have concluded that it is more appropriate to address the issue at a later stage in the proceedings.")); *In re Intel Corp. Microprocessor Antitrust Litig.*, 496 F. Supp. 2d 404, 411 (D. Del. 2007) ("This litigation is still in its infancy, and the Court concludes that these complex and sometimes dispositive choice of law questions should be made with the benefit of a more complete context for this litigation.").

Similarly, a claim for negligent misrepresentation requires a party to demonstrate that (1) a party carelessly or negligently makes a false representation "expecting the other party to rely and act thereon," (2) the plaintiff actually relies on the statement, and (3) suffers a loss as a result of that reliance. *Moore v. Smith*, 2007 UT App 101, ¶ 36 n. 12, 158 P.3d 562, 573.

## B.    Plaintiffs Have Standing for All Three Transactions.

The Lunts, through Keystone and Cable Mountain, made three separate investments in Elkhorn.  Plaintiffs are entitled to recover damages for all three transactions.  Defendants raise standing arguments for two of the transactions, but those arguments fail.  Either Keystone or Cable Mountain (or both) have standing to assert claims for all three transactions.

### 1.    Plaintiffs Have Standing for the First Transaction.

The Lunts' first purchase of $1,000,000 of Elkhorn securities was made through Keystone on or about February 18, 2016.  Am. Compl. ¶ 22.  With Defendants' knowledge and approval, this equity interest was later assigned and transferred to Cable Mountain as part of a book transfer.  *Id*.  No money or other consideration was exchanged, and Cable Mountain is wholly owned by Keystone.  *Id*.  In other words, the stock was transferred from one wholly-owned, family holding company to another wholly-owned, family holding company, and the stock is still an asset of Keystone.  Under these circumstances, an internal transfer of stock to a wholly-owned subsidiary does not destroy standing for a securities fraud claim.

Defendants argue that Keystone does not have standing because it transferred the stock before it discovered the alleged misrepresentation.  Defendants then assert, without citing any authority, that "the fact that Keystone transferred the stock to a related entity does not affect the analysis."  *See* Motion at 10 n. 6.  That is incorrect.  That Plaintiffs transferred the stock from one family entity to a wholly-owned subsidiary is central to the analysis.  Unlike the cases cited

by Defendants (*Glaser* and *McKowan Lowe & Co.*),[2] Keystone did not dispose of its interest

prior to discovering the misrepresentation, and Keystone has suffered a loss from the stock.

That Keystone retains its standing after an internal transfer is demonstrated by analogous

cases that analyze what constitutes the sale of a security under Section 10(b) of the 1934 Act.  In

those cases, courts routinely hold that the transfer of a stock from a parent to a wholly-owned

subsidiary does not amount to a real transfer or sale and does not dispose of the parent's stock.

For example, in *Int'l Controls Corp. v. Vesco*, 490 F.2d 1334, 1343 (2d Cir. 1974), the court held

that a company that transferred stock to its wholly-owned subsidiary did not "in any sense

dispose[] of its . . . stock," and that "as long as [the parent] retained sole ownership of [the

wholly-owned subsidiary], it retained complete control over [the stock] and thus relinquished

nothing in the exchange."  Similarly, in *Rathborne v. Rathborne*, 683 F.2d 914, 918–19 (5th Cir.

1982), the court held that "a transfer of securities from a wholly controlled subsidiary to its

parent or between two corporations wholly controlled by a third does not amount to a statutory

purchase or sale."  And, in *Blau v. Mission Corp.*, 212 F.2d 77, 80 (2d Cir. 1954), the court

stated that a similar transaction was "a mere transfer between two corporate pockets" and that

there had been "no real sale of stock."[3]  Thus, Keystone retains standing to pursue its damages

from the first transaction.

---

[2] In *Glaser v. Enzo Biochem, Inc.*, 464 F.3d 474, 479 (4th Cir. 2006), the plaintiff already sold all of the shares (not to a wholly-owned subsidiary) of a publicly traded company and filed for bankruptcy protection before the alleged truth related to the misrepresentations was made public, meaning any decline in the price of the stock must have been from other factors.  Similarly, in *McKowan Lowe & Co. v. Jasmine, Ltd.*, 231 F. App'x 216, 218 (3d Cir. 2007), the plaintiffs failed to show that prior to the statistically significant drops in Jasmine's stock, there were any disclosures to the market which revealed the truth that was allegedly concealed by misstatements.  Neither *Glaser* or *McKowan* have any relevance for the facts of this case.

[3] *Cf.* 26 U.S.C. § 351 (tax code section on the transfer of property to corporation controlled by the transferor that states "no gain or loss shall be recognized if property is transferred to a corporation by one or more persons solely in exchange for stock in such corporation and immediately after the exchange such person or persons are in control . . . of the corporation").

Alternatively, even if this court were to find that Keystone lost standing by transferring stock to its wholly-owned subsidiary, then Cable Mountain would have standing to assert the claim.  Defendants cite *Lowry v. Baltimore & Ohio R. Co.*, 707 F.2d 721, 723 (3d Cir. 1983) for the proposition that a 10b-5 claim is not assigned with the security when it is sold to a subsequent purchaser.  Motion at 8.  But *Lowry* does not state that.  If anything, *Lowry* supports the opposite conclusion.  *Lowry* was an eight judge panel.  Two judges ruled on other grounds and did not reach the assignability issue.  Three judges believed that rights are assignable only if "there is an express provision to that effect," and three judges believed that "the cause of action was automatically assigned to appellants as purchasers."  *Lowry*, 707 F.2d at 723.  Thus, at least six of the eight judges on this Third Circuit panel recognized the validity of an express assignment.  Many other courts have also recognized that express assignments of the claims may be valid.  *See AmeriFirst Bank v. Bomar*, 757 F.Supp. 1365, 1371 (S.D.Fla. 1991) (holding that "there is no reason why a party who has been injured by the purchase or sale of a security in violation of Rule 10b–5 should not be entitled to expressly assign his claim in accordance with the general rule that claims are legally assignable"); *Farey-Jones v. Buckingham*, 132 F. Supp. 2d 92, 101 (E.D.N.Y. 2001) (collecting cases for this proposition).  Here, any causes of action not retained by Keystone were expressly assigned to Cable Mountain.[4]  Thus, either Keystone or Cable Mountain has standing.

Further, it would be contrary to policy to allow a transfer of stock (made without consideration) from one wholly-owned entity to its wholly-owned subsidiary to destroy standing for a securities fraud claim.  The case of *Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723,

---

[4] The complaint states that the "equity interest was later assigned and transferred to Cable Mountain," Am. Compl. ¶ 22, but does not specify in detail what the assignment included.  If necessary, Plaintiffs could plead that any causes of action not retained by Keystone were expressly assigned to Cable Mountain.

740-41 (1975) is the principle case for limiting standing for 10b-5 actions, and it restricts

standing for 10b-5 actions to actual purchasers or sellers of securities.  The *Blue Chip Stamps*

decision was based principally on two policy considerations: (1) the Court found that Congress

was concerned with blackmail, nuisance, and strike suits, and drafted the Act to circumscribe the

class of plaintiffs who may sue under the Act for the very purpose of eliminating such suits, 421

U.S. at 740–41; and (2) the Court was concerned about the evidentiary problems inherent in

allowing a non-purchaser or non-seller to bring a Rule 10b–5 action.  *Id.* at 741-43.[5]  Neither of

those concerns is implicated here.  Both plaintiffs have the same owners and managers.  The case

does not change based on whether it is Keystone or Cable Mountain with standing.

### 2.     Cable Mountain Has Standing for the Second Transaction.

The Lunts' second purchase of $1,000,000 of Elkhorn securities was made through Cable

Mountain on or about June 29, 2016.  Am. Compl. ¶ 24.  Defendants argue that Cable Mountain

cannot state a claim for this transaction because Cable Mountain was not formed until April 29,

2016 and it would have been impossible for Cable Mountain to rely on the false statements made

on February 6, 2016.  *See* Motion at 11.  But this argument ignores the facts that were pled.  The

managers of Cable Mountain are Larry and John Lunt, the same people to whom Defendants

made the misrepresentations on February 6, 2016.  Am. Compl. ¶¶ 3, 17.  Defendants knew that

both Keystone and Cable Mountain were Lunt family entities and that the Lunts were making a

family investment.  Am. Compl. ¶ 17.  Defendants also knew that Cable Mountain's managers—

Larry and John Lunt—were relying on the past representations made to them, including the false

and misleading misrepresentations identified in the amended complaint, when entering into the

second transaction.  Am. Compl. ¶ 25.  Based on these allegations, Cable Mountain has standing

---

[5] *See also Smith v. Ayres*, 977 F.2d 946, 949 (5th Cir. 1992) (explaining that the "*Blue Chip Stamps* decision to narrow Rule 10b–5 standing was based principally on two policy considerations," and describing those two considerations).

to assert its claim for the second transaction.[6]

### C. Plaintiffs Adequately Allege a False Statement.

Defendants claim that Plaintiffs do not allege a false statement, but that is wrong. *See* Motion at 8, 12. In order to state a 10b-5 claim, Plaintiffs must allege that Defendants made (i) any untrue statement of a material fact, *or* (ii) failed to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading. *Stoneridge*, 552 U.S. at 156. Here, Plaintiffs allege *both* that Defendants made an untrue statement *and* omitted a material fact necessary to make a statement not misleading.

First, Plaintiffs allege that Defendants misrepresented a material fact by representing that Barclays would provide "a total of $5,000,000 in capital," with $3,000,000 being a 5-year loan and the remainder being an annual marketing agreement for $500,000 every May through 2018. Am. Compl. ¶ 28. That statement was false. Barclays was not going to provide a total of $5,000,000 in capital, and Defendants knew that would not occur. Am. Compl. ¶¶ 28, 31-32.

Second, Plaintiffs allege that Defendants made a misleading statement and material omission by failing to inform Plaintiffs that the marketing agreement between Elkhorn and Barclays was contingent upon Elkhorn selling $100 million annually of Barclays products and that Elkhorn did not have any realistic possibility of satisfying that requirement. Am. Compl. ¶ 37. Defendants argue that there is no affirmative duty to disclose material information and that disclosure is only required to make statements "not misleading." *See* Motion at 9. But that is exactly the point. A duty to disclose does arise when there has been "an inaccurate, incomplete or misleading prior disclosure." *Oran v. Stafford*, 226 F.3d 275, 285–86 (3d Cir. 2000). Here, it was incomplete and misleading to state that Elkhorn would get $2,000,000 from Barclays while

---

[6] The Lunts' third purchase of $500,000 of Elkhorn securities was made through Keystone on or about January 20, 2017. Am. Compl. ¶ 26. Defendants do not dispute that Keystone has standing to assert this claim.

omitting that this money was contingent on events that Defendants knew would not occur. Indeed, the complaint alleges that Defendants knew that Elkhorn did not have any realistic possibility of receiving the remaining $500,000 installments at the time Fulton sent the February 6, 2016 email.  Am. Compl. ¶ 31.  Plaintiffs have adequately alleged a false statement.

### D.      Plaintiffs Adequately Allege Loss Causation.

Defendants argue that Plaintiffs have failed to allege loss causation.  Plaintiffs again miss the mark.  Causation under Rule 10b-5 is two-pronged.  "A plaintiff must show both: (1) 'transaction causation' (or 'reliance'), i.e., that but for the fraudulent misrepresentation or omission, the investor would not have purchased or sold the security; and (2) 'loss causation,' i.e., that the fraudulent misrepresentation or omission actually caused the economic loss suffered."  *McCabe v. Ernst & Young, LLP*., 494 F.3d 418, 425 (3d Cir. 2007) (citing *Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc*., 259 F.3d 154, 172 (3d Cir. 2001)).

In order to establish loss causation, a plaintiff must show that "the defendant misrepresented or omitted the very facts that were a substantial factor in causing the plaintiff's economic loss."  *McCabe*, 494 F.3d at 426.  Stated differently, "if false statements are made in connection with the sale of corporate stock, losses due to a subsequent decline in the market, or insolvency of the corporation brought about by business conditions or other factors in no way relate[d] to the representations will not afford any basis for recovery."  *Id*. at 428-29.  "The loss causation element requires the plaintiff to prove 'that it was the very facts about which the defendant lied which caused its injuries.'"  *Id*. at 431 (quoting *Berckeley Inv. Grp., Ltd. v. Colkitt*, 455 F.3d 195, 222 (3d Cir. 2006)).

The Third Circuit recognized that there are "typical" and "non-typical" cases.  In a typical case (also called a "fraud-on-the-market" case), a "plaintiff shareholder alleges that a fraudulent misrepresentation or omission has artificially inflated the price of a publicly-traded

security, with the plaintiff investing in reliance on the misrepresentation or omission." *Id*. at

425.  Then, to satisfy the loss causation requirement, "the plaintiff must show that the revelation

of that misrepresentation or omission was a substantial factor in causing a decline in the

security's price, thus creating an actual economic loss for the plaintiff." *Id*. at 426.

This is a "non-typical case."  It does not involve a publicly-traded security.  Instead,

Defendants' misrepresentations induced Plaintiffs to enter into a private transaction.  The Third

Circuit has recognized that loss causation for non-typical cases "fall into less of a rigid pattern."

*Id*.  Other courts have recognized that "[i]n privately held companies, plaintiffs more commonly

prove loss by showing that a misrepresentation or omission caused him or her to engage in a

transaction and that the revelation of the truth is directly related to the economic loss alleged."

*Meyer v. Ward*, No. 13 C 3303, 2016 WL 5390953, at *5 (N.D. Ill. Sept. 27, 2016) (quoting

*WPP Luxembourg Gamma Three Sarl v. Spot Runner, Inc*., 655 F.3d 1039, 1053 (9th Cir.

2011)); *see also Livid Holdings Ltd. v. Salomon Smith Barney, Inc.*, 416 F.3d 940, 949 (9th Cir.

2005) ("[Plaintiff] has sufficiently pled both elements of causation because it has alleged both

that they would not have purchased the ... stock but for the misrepresentation and that the

Defendants' misrepresentation was directly related to the actual economic loss it suffered.");

*Brown v. Earthboard Sports USA, Inc.*, 481 F.3d 901, 920 (6th Cir. 2007) ("Brown has adduced

evidence sufficient to withstand summary judgment that he was induced to invest in Earthboard

as a result of Vaughn's reckless misrepresentations, and that the revelation of the truth about the

purported VANS merger proximately caused his economic loss.").

In another non-typical case, *EP Medsystems, Inc. v. EchoCath, Inc*., 235 F.3d 865, 869,

884 (3d Cir. 2000), the plaintiff alleged that the defendant had violated section 10(b) by inducing

plaintiff to buy shares in defendant through misrepresentations about "imminent" business

opportunities that were actually non-existent.  The court held the plaintiff's argument that it had been "induced to make an investment of $1.4 million which turned out to be worthless" was a sufficient allegation of loss causation to survive a motion to dismiss.  *Id.* at 884.

Here, as with *EP Medsystems*, Plaintiffs adequately allege loss causation by alleging that "the defendant misrepresented or omitted the very facts that were a substantial factor in causing the plaintiff's economic loss."  *McCabe*, 494 F.3d at 426.  Specifically, Plaintiffs allege the following:

> If the misrepresentations made about Elkhorn's relationship with Barclays were true, including that the $500,000 annual marketing payment was actually unconditional, it would have meant that Elkhorn had much stronger connections with Barclays, strengthening Elkhorn's position in the market.  Further, Elkhorn would have received an additional $1,500,000 from Barclays, money that could have been used to market and sell products and to strengthen its distribution method.  This additional money also would have prevented insolvency.  Accordingly, the facts about which Fulton and Elkhorn made misrepresentations are the same facts which are related to and caused the Lunt Entities' loss.

Am. Compl. § 35.  Thus, it was the very facts about which Defendants lied that caused Plaintiffs' injuries.  This more than satisfies the pleading standard for loss causation.

Defendants' attempt to argue that Plaintiffs' losses were brought about by marketing and distribution issues separate from the misrepresentations about Defendants' relationship with Barclays.  *See* Motion at 17.  But this argument misconstrues the complaint.[7]  As shown above, the amended complaint does connect Elkhorn's insolvency to its failed relationship with Barclays.  It alleges that the facts about which Defendants made misrepresentations are the same facts which are related to and caused Plaintiffs' loss, thereby pleading loss causation.

---

[7] Notably, when Plaintiffs quote from paragraph 33 of the complaint, the part they omit with the ellipsis is an allegation that further connects Plaintiffs' injury to the misrepresentation.  *See* Motion at 17.  The relevant portion of the amended complaint states in its entirety that "[b]y failing to sell Barclays products, Elkhorn was unable to sell a significant number of other ETFs *that it would have been able to sell with a stronger Barclays' relationship*.  Due to its failed relationship with Barclays, Elkhorn was largely unsuccessful."  Am. Compl. ¶ 33 (emphasis added).

### E.       Plaintiffs Adequately Allege Reliance.

Defendants argue that Plaintiffs fail to adequately allege reliance.  That argument also fails.  "The "reasonable reliance" element of a Rule 10b-5 claim requires a showing of a causal nexus between the misrepresentation and the plaintiff's injury, as well as a demonstration that the plaintiff exercised the diligence that a reasonable person under all of the circumstances would have exercised to protect his own interests." *AES Corp. v. Dow Chem. Co.*, 325 F.3d 174, 178 (3d Cir. 2003).  The Third Circuit has "identified a *non-exclusive* set of factors to aid in determining whether a party's reliance was reasonable under all of the circumstances," including "(1) whether a fiduciary relationship existed between the parties; (2) whether the plaintiff had the opportunity to detect the fraud; (3) the sophistication of the plaintiff; (4) the existence of long standing business or personal relationships; and (5) the plaintiff's access to the relevant information. *AES Corp. v. Dow Chem. Co.*, 325 F.3d 174, 178–79 (3d Cir. 2003) (emphasis added) (citing *Straub v. Vaisman and Co., Inc.*, 540 F.2d 591, 597-98 (3d Cir. 1976)).

Here, Plaintiffs satisfy both parts of the reasonable reliance test.  Plaintiffs have alleged a nexus between the misrepresentation and the injury.  And Plaintiffs have demonstrated that they exercised the diligence that a reasonable person under all of the circumstances would have exercised to protect his own interests.  In addition, the non-exclusive factors from *Straub* (along with other factors) also weigh in their favor.

As alleged in the complaint, John Lunt sent Fulton an email to learn about Elkhorn while considering whether to make an investment.  Am. Compl. ¶ 16.  Fulton responded and made the misrepresentations at issue in this case.  Am. Compl. ¶ 18.  Fulton then asked Phil Ziesemer— Elkhorn's CFO—to confirm those representations.  Am. Compl. ¶ 19.  Ziesemer made one minor correction and otherwise confirmed that Fulton's representations were correct.  *Id.*  Plaintiffs thus had written statements from both Elkhorn's CEO and CFO confirming the representations.

While Plaintiffs engaged in other diligence, these representations were critical statements on which Plaintiffs relied in their decision to invest in Elkhorn. Am. Compl. ¶¶ 20-21.

These facts demonstrate a nexus between the representation and injury, and they demonstrate reasonable diligence. Plaintiffs had a personal relationship with both the CEO and CFO that allowed them to have direct written email communications about their investment questions. Am. Compl. ¶¶ 16-17. Through this relationship, Fulton knew the nature of the Lunts' family investment. *Id*. The Lunts were a high priority to Elkhorn and received personalized attention because they were the only outside investor other than a single individual with 500 units. *Id*. at ¶ 17. Under these circumstances, it was reasonable to rely on the written information received directly from the CEO and CFO.

Defendants argue that the opportunity to detect the fraud and access to relevant information favor dismissal because Plaintiffs never requested to look at the Barclays agreement. Motion at 12-13. Not so. That argument relies on an after-the-fact perspective and assumes that the only representation Plaintiffs had to check was that related to Barclays. But Defendants made numerous other representations to Plaintiffs. Plaintiffs had no reason to suspect the representations about Barclays were false any more than all of the other answers and representations made by Defendants. It was not possible to know which representations were likely to be false ahead of time and which statements deserved higher scrutiny. Assuming Defendants responses were truthful, Plaintiffs had the information they needed and did not need further investigation. Defendants proposed standard would require Plaintiffs to fact-check *all* of the representations made, not just those about Barclays. The law does not impose that burden. Nor does it impose that level of distrust and skepticism. When the CEO made direct representations to Plaintiffs, and those representations were confirmed by the CFO, Plaintiffs

were entitled to rely on those written statements.[8]

Defendants also argue that in light of the "non-reliance" provision in the Subscription Agreement, Plaintiffs could not have relied on their misrepresentations.  Motion at 15-16.  But Defendants inaccurately characterize that agreement.  It is true that the "Entire Agreement" section of the Subscription Agreement states that "no promise, representation, or inducement *not contained in this Agreement* has been made to them." Motion at 16 (emphasis added).  But the "Representations" section acknowledges and incorporates all of the representations previously made by Defendants to Plaintiffs into the Agreement.  As set forth in the complaint:

> The subscription agreement entered into between Elkhorn and Keystone identifies, acknowledges, and incorporates the representations previously made by Elkhorn and Fulton about the Barclays relationship, stating that the Company "has afforded Keystone the opportunity to discuss the investment with and to ask questions of the Company and has provided answers to all of Keystone's questions . . ." and "Keystone acknowledges having received satisfactory answers to all of his questions from representatives of the Company . . . ."

Am. Compl. ¶ 23.  With the "answers to all of Keystone's questions" being incorporated into the Subscription Agreement, those answers cannot be barred by it.  Accordingly, the Subscription

---

[8] For these same reasons, Plaintiffs adequately alleged justifiable reliance for the state law claims as well, regardless of which forum's law applies.  In Delaware, "whether a plaintiff has the right to rely on specific representations depends on whether the representations involve matters that a reasonable person would consider important in determining his course of action in the transaction in question.  The recipient of the information is required to use his senses, and cannot recover if he blindly relies upon a misrepresentation the falsity of which would be patent to him if he had utilized his opportunity to make a cursory examination or investigation." *Tekstrom, Inc. v. Savla*, No. CIV.A. 05A-12-006JTV, 2006 WL 2338050, at *11 (Del. Super. Ct. July 31, 2006), aff'd, 918 A.2d 1171 (Del. 2007) (citations omitted).  In Utah, "a plaintiff may justifiably rely on positive assertions of fact without independent investigation. It is only where, under the circumstances, the facts should make it apparent to one of his knowledge and intelligence, or he has discovered something which should serve as a warning that he is being deceived, that a plaintiff is required to make his own investigation." *Robinson v. Tripco Inv., Inc.*, 2000 UT App 200, ¶ 20, 21 P.3d 219, 225.  As demonstrated above, Plaintiffs did not blindly rely upon a misrepresentation which would have been obvious if they used their senses.  Under the circumstances, with the CEO and CFO providing direct, written answers to specific questions, Plaintiffs were entitled to rely on those statements as long as they were not obviously false upon a cursory examination, which they were not in this case.

Agreement cannot be used to show that Plaintiffs were not entitled to rely on the misrepresentations.[9]

### F.      Plaintiffs Adequately Allege Scienter.

Defendants next allege that Plaintiffs fail to allege scienter.  To state a 10b-5 claim, plaintiffs must "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind."  *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 314 (2007) (quoting 15 U.S.C. § 78u–4(b)(2)).  The Supreme Court held that "an inference of scienter must be more than merely plausible or reasonable—it must be cogent and at least as compelling as any opposing inference of nonfraudulent intent."  *Id.*  In a case following *Tellabs*, the Third Circuit held that a plaintiff may satisfy the scienter standard by alleging "(1) facts to show that defendants had both motive and opportunity to commit fraud, or (2) facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness."  *Key Equity Inv'rs, Inc. v. Sel-Leb Mktg. Inc.*, 246 F. App'x 780, 784–85 (3d Cir. 2007).

Here, that standard is met.  The facts alleged create an inference of scienter at least as compelling as any opposing inference of nonfraudulent intent.  Further, the facts show that defendants had both motive and opportunity to commit fraud, or, at a minimum, strong circumstantial evidence of conscious misbehavior or recklessness.

As set forth in the Complaint, Fulton had a large financial interest in Elkhorn, such that the investments he solicited from the Lunt Entities directly benefitted him.  Am. Compl. ¶ 9. Fulton did not have any outside investors in Elkhorn other than a single individual with 500

_____

[9] Defendants also argue that "Plaintiffs have pleaded themselves out of court because . . . they have alleged affirmatively that they relied on Barclays, and not Defendants, in deciding to invest."  Motion at 14.  First, this argument is wrong because the amended complaint did repeatedly allege that Plaintiffs relied on Defendants in deciding to invest.  *See, e.g.,* Am. Compl. ¶¶ 21, 38, 45, 52.  Moreover, this argument relies on unsound logic and assumes that a party can only rely on one fact when deciding to invest.  That is not true.  People can, and almost always do, rely on multiple factors for investment decisions.

units, increasing the importance of obtaining the Lunts' investment.  Am. Compl. ¶ 17.  The

Lunts' investment was significant, amounting to $2,500,000.  Am. Compl. ¶¶ 22, 24, 26.

When Fulton sent the email, he knew that Elkhorn was not selling any significant

Barclays products and did not have any realistic possibility of selling $100 million of Barclays

products annually.  Am. Compl. ¶ 31.  Fulton therefore knew that Elkhorn would not receive the

remaining $500,000 installments.  *Id*.  Yet Fulton knowingly omitted this material information

with the intention of misleading Plaintiffs.  *Id*.  The decision to include the facts favorable to

Elkhorn (the $500,000 annual marketing payment) without the facts unfavorable to Elkhorn (the

$100 million contingency was never going to be met), show that Fulton and Elkhorn were trying

to paint a more positive picture to induce Plaintiffs' investment.  Am. Compl. ¶ 32.  Given that

the annual marketing payment was not going to be paid, there was no reason for Fulton to

mention the $500,000 annual marketing payment other than to induce the Lunts' investment.  *Id*.

Defendants' acted with an intent to deceive, as they knew their representations were

false, knew they were omitting material facts, and knew that such misleading statements would

induce Plaintiffs to invest in Elkhorn.  Am. Compl. ¶ 41.  This provides an inference of scienter

at least as compelling (indeed, more so) than any opposing inference of nonfraudulent intent.

Defendants claim that a completely innocent explanation exists for the misrepresentations

in the email.  Motion at 18.  Their explanation is that Fulton was answering a question about

arrangements with other partners that could change ownership, and that Fulton did not state that

his representations about the Barclays agreement set forth all of the terms of that agreement and

that if asked, he would have provided the full information.  Motion at 18.  That explanation is not

more compelling than the motivation set forth in the complaint.  As explained above and alleged

in the complaint, Fulton intentionally provided misleading information by including the facts

favorable to Defendants without including the facts unfavorable to Defendants. Further, that purported "innocent explanation" does not explain the actual false misrepresentation that Barclays would provide "a total of $5,000,000 in capital."[10] That was not merely an additional term that Fulton innocently left out. It was a false statement, made with the intention of portraying a more successful relationship with Barclays than actually existed.

Plaintiffs have alleged facts with particularity giving rise to a strong inference that Defendants acted with the intent to fraudulently misrepresent their agreement and relationship with Barclays. Accordingly, Plaintiffs have satisfied the scienter requirement.

### G.    Plaintiffs Adequately Allege Negligent Misrepresentation.

Under Utah law, a claim for negligent misrepresentation requires a party to demonstrate that (1) a party carelessly or negligently makes a false representation "expecting the other party to rely and act thereon," (2) the plaintiff actually relies on the statement, and (3) suffers a loss as a result of that reliance. *Moore v. Smith*, 2007 UT App 101, ¶ 36 n. 12, 158 P.3d 562, 573. Plaintiffs satisfy all of these elements, and Defendants do raise any arguments under Utah law.

Likewise, if Delaware law were to apply, Plaintiffs also state a claim for negligent misrepresentation. In order to sustain a claim for negligent misrepresentation under Delaware law, plaintiffs must prove (1) a pecuniary duty to provide accurate information, (2) the supplying of false information, (3) failure to exercise reasonable care in obtaining or communicating information, and (4) a pecuniary loss caused by justifiable reliance upon the false information. *Resolve Funding, LLC v. Buckley Prop. Servs., LLC*, No. CV S17C-09-003 RFS, 2018 WL 776417, at *4 (Del. Super. Ct. Feb. 7, 2018).

Plaintiffs explain how elements two through four are satisfied earlier in this

---

[10] At the very least, this misrepresentation and omission would constitute strong circumstantial evidence of recklessness, recognized as sufficient to plead scienter in *Key Equity Inv'rs, Inc. v. Sel-Leb Mktg. Inc.*, 246 F. App'x 780, 784–85 (3d Cir. 2007).

memorandum.  The only new element is element one, which requires a "pecuniary duty" to provide accurate information.  A Delaware court has explained that "the purpose of the pecuniary duty requirement is to shield those who gratuitously provide information from liability under the negligent misrepresentation doctrine, by limiting liability to situations in which the defendant has a pecuniary interest in the transaction in which the information is given."  *Vichi v. Koninklijke Philips Elecs., N.V.*, 85 A.3d 725, 763 (Del. Ch. 2014) (citation omitted).  Thus, to succeed on a negligent misrepresentation claim," a plaintiff must show that the source of the allegedly misleading information was a defendant who "expect[ed] to profit from the course of conduct in which he provide[d] the information, [such that] he c[ould] reasonably be expected to take reasonable care in providing that information."  *Id.* (quoting *Corp. Prop. Assocs. 14 Inc. v. CHR Holding Corp.*, No. CIV.A 3231-VCS, 2008 WL 963048, at *9 (Del. Ch. Apr. 10, 2008)).

Plaintiffs satisfy this requirement.  The complaint alleges that Defendants expected to profit from the course of conduct in which they provided the information, and they could reasonably be expected to take reasonable care in providing the information.  Thus, whether Utah or Delaware law applies, Plaintiffs have adequately pled the negligent misrepresentation claim.

## H.     The Claims Are Not Time-Barred.

Finally, Defendants incorrectly argue that the 10b-5 claims are time-barred.  Motion at 19.  But Plaintiffs allege that the representations received from Defendants were not discovered to be false and misleading until May 2, 2017, Am. Compl. ¶ 27, and the complaint was filed on August 13, 2018.  That is within the two year statute of limitations.  See *Merck & Co. v. Reynolds*, 559 U.S. 633, 637 (2010) (stating that a 2-year statute applies).

Defendants' only argument is that a reasonably diligent plaintiffs *should have* discovered the misrepresentation by June 2016.  That argument is wrong.  As explained above, a reasonable investor could rely on the written statements of the CEO and CFO and did not have an obligation

to further investigate and verify the truthfulness of their statements under those circumstances.

Further, Defendants' argument is similar to the "inquiry notice" argument that was rejected in *Merck*.  There, the defendant argued that the limitation period should begin to run at the point "which a plaintiff possesses a quantum of information sufficiently suggestive of wrongdoing that he should conduct a further inquiry," or, at a minimum, the plaintiff "fails to undertake an investigation once placed on 'inquiry notice.'" *Merck*, 559 U.S. at 650-51.  The Court rejected that argument, finding it could be not be reconciled with the statute which simply provides that "discovery" is the event that triggers the 2-year limitation period.  *Id*. at 652.

Finally, the question of whether a plaintiff *should* have discovered a false statement is a factual question not proper for a motion to dismiss.  *See, e.g., Schmidt v. Skolas*, 770 F.3d 241, 251 (3d Cir. 2014) ("while a court may entertain a motion to dismiss on statute of limitations grounds, it may not allocate the burden of invoking the discovery rule in a way that is inconsistent with the rule that a plaintiff is not required to plead, in a complaint, facts sufficient to overcome an affirmative defense." (citations omitted));  *TL of Fla., Inc. v. Terex Corp.*, 54 F. Supp. 3d 320, 329 (D. Del. 2014) ("determining whether the statute of limitations has been tolled pursuant to the "discovery rule" or due to fraudulent concealment requires a factual inquiry not amenable to resolution on a motion to dismiss").

## V.    CONCLUSION

For the reasons set forth above, Plaintiffs have sufficiently pled claims for securities fraud, state law fraud and fraudulent inducement, and negligent misrepresentation.  Defendants' motion to dismiss should be denied.

OF COUNSEL

David J. Jordan
Michael R. Menssen
STOEL RIVES LLP
201 S. Main Street, Suite 1100
Salt Lake City, UT 84111
(801) 328-3131

POTTER ANDERSON & CORROON LLP

By: */s/ Jonathan A. Choa*
    Timothy R. Dudderar (# 3890)
    Jonathan A. Choa (#5319)
    Hercules Plaza
    P.O. Box 951
    Wilmington, DE  19899-0951
    (302) 984-6000

*Attorneys for Plaintiffs*

Dated:  December 10, 2018
6022813