IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| KEYSTONE ASSOCIATES LLC, a Utah limited liability company; CABLE MOUNTAIN PARTNERS LLC, a Utah limited liability company, | )<br>)<br>)<br>)<br>) |
| Plaintiffs, | )<br>) |
| v. | ) Civ. No. 18-1235-MN |
| BENJAMIN FULTON, an individual; ELKHORN CAPITAL GROUP, LLC, a Delaware limited liability company, | )<br>)<br>)<br>) |
| Defendants. | ) |

## MEMORANDUM OPINION

Timothy R. Dudderar, Jonathan A. Choa, POTTER ANDERSON & CORROON LLP, Wilmington, Delaware. David J. Jordan, Michael R. Menssen, STOEL RIVERS LLP, Salt Lake City, Utah. Counsel for Plaintiffs.

Robert J. Katzenstein, SMITH, KATZENSTEIN & JENKINS LLP, Wilmington, Delaware. Steven S. Scholes, Peter B. Allport, MCDERMOTT WILL & EMERY LLP, Chicago, Illinois. John R. Gerstein, Clyde & Co. US LLP, Washington, DC. Counsel for Defendants.

August 8, 2019
Wilmington, Delaware

**NOREIKA, U.S. DISTRICT JUDGE**

Plaintiffs Keystone Associates LLC ("Keystone") and Cable Mountain Partners LLC ("Cable Mountain," and collectively, "Plaintiffs") have sued defendants Benjamin Fulton ("Fulton") and Elkhorn Capital Group, LLC ("Elkhorn," and collectively, "Defendants") for securities fraud, common law fraud, and negligent misrepresentation. Fulton is the founder, manager, and chief executive officer of Elkhorn.

Pending before the Court is Defendants' motion to dismiss the amended complaint for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. (D.I. 16). The Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1367. For the following reasons, Defendants' motion to dismiss is GRANTED.

## I.  BACKGROUND

Three transactions between Plaintiffs and Defendants are at issue in this action. On February 18, 2016, Keystone and Elkhorn entered into a subscription agreement ("the Subscription Agreement") whereby Elkhorn issued 1,110 Class A Units to Keystone in exchange for a capital contribution of $1,000,000. (D.I. 17-1, Ex. 1(B) ¶ A). The amended complaint alleges that this equity interest was later assigned and transferred to Cable Mountain. (D.I. 15 ¶ 22).

On June 29, 2016, Cable Mountain entered into an agreement with Elkhorn to provide Elkhorn a loan of $1,000,000 in exchange for a promissory note. (*Id*. ¶ 24). Cable Mountain had the option to convert this promissory note into equity of Elkhorn. (*Id*.).

On January 30, 2017, Keystone provided Elkhorn with a loan of $500,000 in exchange for a convertible promissory note. (*Id*. ¶ 26). Under this promissory note, Keystone had the option to convert all or any portion of the principal amount and accrued interest of the loan into equity of Elkhorn. (*Id*.).

1

According to the amended complaint, Plaintiffs engaged in all three transactions based on the same misrepresentation. Specifically, Larry and John Lunt (managers of both Keystone and Cable Mountain) exchanged emails with Fulton and Phil Ziesemer (the CEO and CFO of Elkhorn, respectively) on February 6, 2016. (D.I. 15 ¶¶ 37, 43, 48). In that email exchange, Fulton and Ziesemer purportedly represented that Barclays committed to making an unconditional $500,000 marketing payment to Elkhorn each year for next three years. (*Id.* ¶ 35). Contrary to that representation, the annual $500,000 marketing payment was contingent upon Elkhorn selling $100,000,000 of Barclays' products annually. (*Id.* ¶ 29). Elkhorn is now insolvent, and Plaintiffs' investments are "essentially worthless." (*Id.* ¶ 34).

## II.  STANDARD OF REVIEW

"To survive a motion to dismiss, a civil plaintiff must allege facts that 'raise a right to relief above the speculative level on the assumption that the allegations in the complaint are true (even if doubtful in fact).'" *Victaulic Co. v. Tieman*, 499 F.3d 227, 234 (3d Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Dismissal under Rule 12(b)(6) is appropriate if a complaint does not contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570); *see also Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. The factual allegations do not have to be detailed, but they must provide more than labels, conclusions, or a "formulaic recitation" of the claim elements. *Twombly*, 550 U.S. at 555-56. The Court is not obligated to accept as true "bald assertions" or "unsupported conclusions and unwarranted inferences." *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997);

*Schuylkill Energy Res., Inc. v. Pa. Power & Light Co.*, 113 F.3d 405, 417 (3d Cir. 1997). Instead, "[t]he complaint must state enough facts to raise a reasonable expectation that discovery will reveal evidence of [each] necessary element" of a plaintiff's claim. *Wilkerson v. New Media Tech. Charter Sch. Inc.*, 522 F.3d 315, 321 (3d Cir. 2008) (internal quotation marks omitted). The court must accept all well-pleaded factual allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff. *In re Rockefeller Ctr. Prop., Inc. Sec. Litig.*, 311 F.3d 198, 215 (3d Cir. 2002).

## III. DISCUSSION

Plaintiffs' amended complaint asserts three claims: securities fraud (Count 1), common law fraud (Count 2), and negligent misrepresentation (Count 3). (D.I. 15 ¶¶ 36-52). Defendants raise a multitude of arguments as to why the claims should be dismissed, including that: Cable Mountain does not have standing to assert a claim based on Keystone's purchase of Elkhorn Units or Keystone's loan to Elkhorn; Keystone does not have standing to assert a claim based on its purchase of Elkhorn Units or Cable Mountain's loan to Elkhorn; Defendants did not make a false statement or omit a material fact to Keystone; Defendants did not direct the statements at issue to Cable Mountain; all of the claims are defective for failure to allege justifiable reliance, loss causation, and scienter; the Rule 10b-5 claims are time barred; and, finally, there was no fiduciary relationship between the parties as required to state a claim for negligent omission. (D.I. 17). The Court is unable to resolve some of these issues at this time, such as the statute of limitations, because Defendants addressed the issue in only a cursory manner without citation to case law supporting their specific assertions. Despite Defendants' kitchen-sink approach to its motion to dismiss, however, the Court finds that some of these arguments warrant dismissal of Plaintiffs' amended complaint.

3

### A. Cable Mountain

Cable Mountain asserts federal and state law claims based on two transactions: Keystone's purchase of Elkhorn Units in February 2016 and its own loan to Elkhorn in June 2016.

#### 1. The 2016 Purchase of Elkhorn Units

Cable Mountain has not established that it has standing to assert a federal securities law claim based on Keystone's purchase of Elkhorn Units. Under Rule 10b-5, standing to assert a claim is limited to "actual purchasers or sellers of securities." *Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723, 755 (1975); *Winer Family Trust v. Queen*, 503 F.3d 319, 325 (3d Cir. 2007). Here, there is no allegation that Cable Mountain purchased the Elkhorn Units from Defendants. Instead, the amended complaint alleges that Keystone purchased the Elkhorn Units and "the equity interest was later assigned and transferred to Cable Mountain." (D.I. 15 ¶¶ 22-23).

"It is well-established under federal securities law that securities fraud claims are not automatically transferred to a subsequent purchaser upon the sale of the underlying security." *U.S. Trust Co. of New York v. Alpert*, 10 F. Supp. 2d 290, 303 (S.D.N.Y. 1998); *see Bluebird Partners v. First Fidelity Bank, N.A.*, 85 F.3d 970, 974 (2d Cir. 1996); *Smith v. Ayres*, 977 F.2d 946, 950 (5th Cir. 1992); *In re Nucorp Energy Sec. Litig.*, 772 F.2d 1486, 1490 (9th Cir. 1985); *see also Lowry v. Baltimore & Ohio R.R.*, 707 F.2d 721, 723 (3d Cir. 1983) (en banc); *Id.* at 730 (Garth, J. and Sloviter, J., concurring) (stating that a "Rule 10b-5 action did not run with the debentures"); *Id.* at 732 (Adams, J., concurring) (stating that "federal law does not provide for the automatic assignment" of "causes of actions arising under the federal securities laws").

The law is not well-settled on whether securities fraud claims can be expressly assigned to a subsequent purchaser. *Dobyns v. Trauter*, 552 F. Supp. 2d 1150, 1154 (W.D. Wash. 2008) (stating that the law on express assignment is "less clear" than the law on automatic assignment).

4

At least two courts have held that Rule 10b–5 claims may be expressly assigned. *Farey–Jones v. Buckingham*, 132 F.Supp.2d 92, 100–02 (E.D.N.Y.2001); *AmeriFirst Bank v. Bomar*, 757 F. Supp. 1365, 1371 (S.D. Fla. 1991). In addition, several members of an en banc panel of the Third Circuit opined, in dicta, that express assignments are permissible. *Lowry*, 707 F.2d at 729-30. In contrast, at least one court has held, under the circumstances presented in that case, that an express assignment did not confer standing. *Smith*, 977 F.2d at 950.

Ultimately, the Court need not resolve whether an express assignment effectively transfers a securities fraud claim, because Plaintiffs acknowledge that the amended complaint does not presently allege an express assignment of that claim. (D.I. 19 at 7). Plaintiffs have alleged only the transfer of an equity interest, which does not establish that Cable Mountain has standing to assert a securities fraud claim. Accordingly, any securities fraud claim that Cable Mountain has against Defendants based on Keystone's purchase of Elkhorn Units in February 2016 is dismissed without prejudice.

Defendants also argue that Cable Mountain lacks standing to assert its pendant state law claims for the same reason it lacks standing to assert a federal securities law claim. (D.I. 17 at 8). The parties have not cited any authority from the Third Circuit or Delaware state courts addressing whether state law claims automatically transfer with the resale of a security. Other courts considering the issue, however, have adopted the rule applied to federal securities law claims – *i.e.* there is no automatic transfer. *See*, *e.g.*, *In re Nucorp*, 772 F.2d at 1493 (applying New York law which holds that "state law claims were not automatically transferred when the underlying security was sold"); *Lowry v. Baltimore & Ohio R.R.*, 629 F. Supp. 532, 533-34 (W.D. Pa. 1986) (dismissing state law claims based on New York law because there is no automatic assignment of state law claims when a debenture is resold). As the *Nucorp* court explained: "If causes of action

5

were automatically transferred, defendants could be subject to double liability, and the transferees would recover damages even though they had suffered no injury, while the injured transferors would recover nothing." *In re Nucorp*, 772 F.2d at 1493.

Ultimately, Cable Mountain, as the plaintiff, bears the burden of establishing standing. *FOCUS v. Allegheny Cnty. Ct. Com. Pl.*, 75 F.3d 834, 838 (3d Cir. 1996). Because Cable Mountain has not sufficiently responded to Defendants' argument that it lacks standing to assert state law claims based on the purchase of the Elkhorn Units, its claims for common law fraud and negligent misrepresentation are dismissed without prejudice. *See Ciarlante v. CSX Corp.*, 629 F. Supp. 534, 537 (W.D. Pa. 1986) (dismissing state law claims where plaintiffs failed to provide any authority for the position that Maryland state law claims were automatically assigned upon the sale of a debenture).

### 2. The 2016 Cable Mountain Loan

Cable Mountain fails to state a claim for securities fraud, common law fraud, or negligent misrepresentation based on its June 2016 loan to Elkhorn. To state a cognizable claim, Cable Mountain must allege facts that create a plausible inference that Defendants actually made a statement to Cable Mountain. *See McCabe v. Ernst & Young, LLP.*, 494 F.3d 418, 424 (3d Cir. 2007). Cable Mountain, however, was not in existence at the time Defendants sent the February 6, 2016 email containing the alleged misrepresentation. Cable Mountain was formed three months later, on April 29, 2016.[1] (D.I. 17-1, Ex. 2). Thus, it is impossible for Defendants to have made a statement to Cable Mountain on February 6, 2016. Ultimately, "Plaintiffs cannot premise [a] fraud claim on statements that were not made to them." *Lycan v. Walters*, 904 F. Supp.

---

[1] The court may take judicial notice of a company's certificate of incorporation on a motion to dismiss. *Zomolosky v. Kullman*, 70 F. Supp. 3d 595, 607 (D. Del. 2014).

6

884, 897 (S.D. Ind. 1995) (dismissing fraud claim where statements were made to a corporation in which plaintiffs invested and not to the plaintiffs). Therefore, Cable Mountain's claims for securities fraud, common law fraud, and negligent misrepresentation based on its loan to Elkhorn are dismissed without prejudice.

**B.     Keystone**

Like Cable Mountain, Keystone asserts claims of securities fraud, common law fraud, and negligent misrepresentation based on two transactions: Keystone's purchase of Elkhorn Units in February 2016 and its own loan to Elkhorn in January 2017. An essential element of all three claims is reliance on a false representation. *McCabe*, 494 F.3d at 424 (elements of a Rule 10b-5 claim); *LVI Grp. Invs., LLC v. NCM Grp. Holdings*, LLC, 2018 WL 1559936, at *1 (Del. Ch. Mar. 28, 2018) (elements of a common law fraud claim); *Kuhn Const. Co. v. Ocean & Coastal Consultants, Inc*., 844 F. Supp. 2d 519, 525 (D. Del. 2012) (elements of a negligent misrepresentation claim). In other words, Keystone must allege facts showing that "but for the fraudulent misrepresentation or omission, [it] would not have purchased or sold the security." *McCabe*, 494 F.3d at 425. All three claims for both transactions are based on the same alleged misrepresentation in the February 6, 2016 email – that Barclays was providing a guaranteed annual marketing payment of $500,000.

Here, the amended complaint fails to allege that Defendants relied on the purported misrepresentation regarding the $500,000 marketing payment. Instead, the amended complaint alleges that the "critical factor" that caused Keystone to invest in Elkhorn was Elkhorn's "relationship with Barclays," and Barclays' endorsement of Elkhorn. (D.I. 15 ¶¶ 20-21). Specifically, the amended complaint alleges:

> Elkhorn's purported relationship with Barclays was a *critical factor* in the Lunts decision to invest in Elkhorn. Elkhorn's website touted

7

> its "strategic partnership" with Barclays to promote the appearance of financial stability and credibility. Barclays itself claimed that Elkhorn was "very complementary to Barclays' business, and very aligned to investors' needs."
>
> The Lunts trusted Barclays' reputation. *Barclays' confidence in having Elkhorn sell products on their behalf gave the Lunts the confidence to invest in Elkhorn*. The Lunts thus reasonably relied on Elkhorn's representation in their decision to invest.

(*Id.*). The amended complaint underscores that Plaintiffs relied on Elkhorn's relationship with Barclays and not the marketing payment when deciding to invest when it alleges that "[Plaintiffs] justifiably relied on the representations about the partnership between Elkhorn and Barclays that were made by Defendants when making the decision to invest in Elkhorn." (*Id.* ¶ 52). Because Keystone has failed to plead facts showing that it justifiably relied on a false representation, it has failed to state a claim for securities fraud, common law fraud, and negligent misrepresentation. Accordingly, those claims are dismissed without prejudice.

Keystone's state law claims based on the 2016 Purchase of the Elkhorn Units are also dismissed as barred by the anti-reliance clause in the Subscription Agreement.[2] Paragraph 4 of the Subscription Agreement states:

> The parties each acknowledge and represent that no promise, representation, or inducement not contained in this Agreement has been made to them and that this Agreement contains the entire understanding between the parties with respect to the subject matter hereof.

(D.I. 17-1, Ex. 1(B) ¶ 4).

"Delaware law enforces clauses that identify the specific information on which a party has relied and which foreclose reliance on other information." *Prairie Capital III, L.P. v. Double E*

---

[2] The anti-reliance clause in the Subscription Agreement would not bar state law claims based on Keystone's 2017 loan to Elkhorn, because the Subscription Agreement does not govern that transaction.

8

*Holding Corp.*, 132 A.3d 35, 50 (Del. Ch. 2015). Where the contract at issue contains an effective anti-reliance clause, representations made outside the contract cannot form the basis for common law fraud or negligent misrepresentation. *ChyronHego Corporation v. Wight*, 2018 WL 3642132, at *1 (Del. Ch. July 31, 2018); *see also Prairie Capital*, 132 A.3d at 50 (stating that a party cannot promise "that it will not rely on promises and representations outside of the agreement and then shirk its own bargain") (quoting *Abry P'rs V, L.P. v. F & W Acq. LLC*, 891 A.2d 1032, 1058 (Del. Ch. 2006)). Because paragraph 4 of the Subscription Agreement functions as an anti-reliance clause, Plaintiffs cannot rely on extra-contractual statements, such as the February 6, 2016 email, to establish a claim for common law fraud or negligent misrepresentation in connection with the 2016 purchase of the Elkhorn Units.

Plaintiffs do not dispute that the Subscription Agreement contains an enforceable anti-reliance provision. Instead, Plaintiffs argue that the extra-contractual statements were incorporated into the Subscription Agreement through Keystone's representation regarding due diligence. Keystone represented and warranted in paragraph 2(a) of the Subscription Agreement that:

> The Company has made available to Keystone all information that Keystone has requested relating to the Company and an investment in the Subscription Units, has afforded Keystone the opportunity to discuss the investment with and to ask questions of the Company and has provided *answers to all of Keystone's questions* concerning the offering of the Subscription Units. Keystone acknowledges having received satisfactory answers to all of his [sic] questions from representatives of the Company and having obtained sufficient additional information requested by him [sic] of the Company and its representatives.

(D.I. 17-1, Ex. 1(B) ¶ 2(a)). According to Plaintiffs, acknowledging that Elkhorn "has provided answers to all of Keystone's questions" means that the answers to those questions, including the answers in the February 6, 2016 email, were incorporated into the Subscription Agreement. (D.I. 19 at 15).

9

Plaintiffs' argument is unavailing. It is contrary to general principles of contract construction and made without any citations to supporting case law. Where the plain language of a contract is unambiguous, Delaware courts construe the contract in accordance with that plain meaning. *BLGH Holdings LLC v. enXco LFG Holding, LLC*, 41 A.3d 410, 414 (Del. 2012). A plain reading of the clause on which Plaintiffs rely means that the Company has answered all of Keystone's questions regarding the Elkhorn Units. Finally, the clause Plaintiffs cite cannot constitute an agreement by Elkhorn to incorporate extra-contractual statements into the Subscription Agreement because the clause is part of a representation and warranty made by Keystone, not by the Defendants. Accordingly, Plaintiffs cannot rely on extra contractual statements as the basis of their fraud and negligent misrepresentation claims in connection with the February 2016 transaction.

## IV. **CONCLUSION**

For the foregoing reasons, Defendants' motion to dismiss the amended complaint (D.I. 16) is GRANTED. The amended complaint (D.I. 15) is dismissed without prejudice. An appropriate order will be entered.