IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| KEYSTONE ASSOCIATES LLC, a Utah limited liability company; CABLE MOUNTAIN PARTNERS LLC, a Utah limited liability company, | ) ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | C.A. No. 18-1235-MN |
| BENJAMIN FULTON, an individual; ELKHORN CAPITAL GROUP, LLC, a Delaware limited liability company, | ) ) ) ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION

Timothy R. Dudderar, Jonathan A. Choa, POTTER ANDERSON & CORROON LLP, Wilmington, Delaware. David J. Jordan, Michael R. Menssen, STOEL RIVERS LLP, Salt Lake City, Utah. Counsel for Plaintiffs.

Robert J. Katzenstein, SMITH, KATZENSTEIN & JENKINS LLP, Wilmington, Delaware. Steven S. Scholes, Peter B. Allport, MCDERMOTT WILL & EMERY LLP, Chicago, Illinois. John R. Gerstein, Clyde & Co. US LLP, Washington, DC. Counsel for Defendants.

June 23, 2020
Wilmington, Delaware

*[signature: Maryellen Noreika]*

**NOREIKA, U.S. DISTRICT JUDGE**

Plaintiffs Keystone Associates LLC ("Keystone") and Cable Mountain Partners LLC ("Cable Mountain," and collectively, "Plaintiffs") have sued defendants Benjamin Fulton ("Fulton") and Elkhorn Capital Group, LLC ("Elkhorn," and collectively, "Defendants") for securities fraud, common law fraud, and negligent misrepresentation. Fulton is the founder, manager, and chief executive officer of Elkhorn.

On August 8, 2019, the Court issued a Memorandum Opinion dismissing Plaintiffs' amended complaint for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6), but granting Plaintiffs leave to amend. (D.I. 26; D.I. 27). Plaintiffs thereafter filed a second amended complaint, which is the currently operative complaint, and Defendants filed another motion to dismiss pursuant to Rule 12(b)(6). (D.I. 28; D.I. 29). The Court has subject matter jurisdiction over the federal securities law claims pursuant to 28 U.S.C. § 1331 and supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

For the following reasons, the federal securities law claims will be dismissed for failure to state a claim, and those claims are dismissed with prejudice. The state law claims are also dismissed because the Court declines to exercise supplemental jurisdiction. *See* 28 U.S.C. § 1367(c)(3) (stating that a district court "may decline to exercise supplemental jurisdiction" over state-law claims if it "has dismissed all claims over which it has original jurisdiction").

**I.      BACKGROUND**

Plaintiffs Keystone and Cable Mountain are Utah limited liability companies, and Keystone is the sole owner of Cable Mountain. (D.I. 28 ¶¶ 2-3). Plaintiff Larry Lunt and his wife, who is not named and who has not joined in this action, are the sole owners of Keystone. (*Id.* ¶ 2).

1

Plaintiff John Lunt is Larry Lunt's son and a manager at Keystone and Cable Mountain. (*Id*. ¶¶ 2-3).

Three transactions between Plaintiffs and Defendants are at issue in this action: a February 2016 purchase of Elkhorn Units by Keystone, a June 2016 loan from Cable Mountain to Elkhorn, and a January 2017 loan from Keystone to Elkhorn. (*Id*. ¶¶ 22, 25, 28). In exchange for the loans, Cable Mountain and Keystone each received a promissory note with an option to convert the note into equity of Elkhorn. (*Id.*). According to the complaint, Plaintiffs engaged in all three transactions based on the same misrepresentation in a February 6, 2016 email exchange where Fulton purportedly represented that Barclays committed to making an annual $500,000 marketing payment to Elkhorn with no conditions. (*Id*. ¶¶ 20, 31). Contrary to that representation, the $500,000 marketing payment was contingent upon Elkhorn selling $100,000,000 of Barclays' products annually. (*Id*. ¶ 31). Elkhorn is now insolvent, and Plaintiffs' investments are "essentially worthless." (*Id*. ¶ 36).

## II.  STANDARD OF REVIEW

### A.  Rule 12(b)(6)

"To survive a motion to dismiss, a civil plaintiff must allege facts that 'raise a right to relief above the speculative level on the assumption that the allegations in the complaint are true (even if doubtful in fact).'" *Victaulic Co. v. Tieman*, 499 F.3d 227, 234 (3d Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Dismissal under Rule 12(b)(6) is appropriate if a complaint does not contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570); *see also Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the

reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.  The factual allegations do not have to be detailed, but they must provide more than labels, conclusions, or a "formulaic recitation" of the claim elements.  *Twombly*, 550 U.S. at 555-56.  The Court is not obligated to accept as true "bald assertions" or "unsupported conclusions and unwarranted inferences."  *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997); *Schuylkill Energy Res., Inc. v. Pa. Power & Light Co.*, 113 F.3d 405, 417 (3d Cir. 1997).  Instead, "[t]he complaint must state enough facts to raise a reasonable expectation that discovery will reveal evidence of [each] necessary element" of a plaintiff's claim.  *Wilkerson v. New Media Tech. Charter Sch. Inc.*, 522 F.3d 315, 321 (3d Cir. 2008) (internal quotation marks omitted).  The court must accept all well-pleaded factual allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff.  *In re Rockefeller Ctr. Prop., Inc. Sec. Litig.*, 311 F.3d 198, 215 (3d Cir. 2002).

### B.  Rule 9(b) and The Private Securities Litigation Reform Act ("PSLRA")

All of Plaintiffs' claims sound in fraud, and thus they are subject to the heightened pleading requirement set forth in Rule 9(b) of the Federal Rules of Civil Procedure.  *See Cavi v. Evolving Sys. NC, Inc.*, No. 15-1211-RGA, 2018 WL 2372673, at *2 (D. Del. May 24, 2018) (holding that Rule 9(b) applies to negligent misrepresentation claims sounding in fraud).[1]  Accordingly, for each claim, Plaintiffs "must state with particularity the circumstances constituting fraud."  Fed. R. Civ. P. 9(b).  Put another way, Rule 9(b) requires that a plaintiff set forth "the who, what, when, where and how" of the alleged fraud.  *In re Advanta Corp. Sec. Litig.*, 180 F.3d 525, 534 (3d Cir. 1999).

---

[1]  Plaintiffs specifically incorporate all of their fraud allegations into their claim for negligent misrepresentation.  (*See* D.I. 28 ¶ 49).

In addition, Plaintiffs' securities fraud claim is subject to the heightened pleading requirements of the PSLRA requiring that Plaintiffs "specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed." 15 U.S.C. § 78u-4(b)(1). Further, Plaintiffs must "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." 15 U.S.C. § 78u-4(b)(2)(A).

### III. DISCUSSION

To state a claim for securities fraud pursuant to §10(b) and Rule 10b-5, Plaintiffs must allege: (1) a material misrepresentation or omission, (2) scienter, (3) a connection with the purchase or sale of a security, (4) justifiable reliance, (5) economic loss, and (6) loss causation. *McCabe v. Ernst & Young, LLP*, 494 F.3d 418, 424 (3d Cir. 2007). With these elements in mind, each of the three transactions are addressed in turn.

#### A. The 2016 Purchase of Elkhorn Units

After purchasing the Elkhorn Units in 2016, Keystone assigned them to Cable Mountain. (D.I. 15 ¶ 22). To have standing to assert federal securities claims based on the Elkhorn Units, Cable Mountain must be an "actual purchaser." *Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723, 755 (1975); *Winer Family Trust v. Queen*, 503 F.3d 319, 325 (3d Cir. 2007). In connection with the prior motion to dismiss, the Court held that Cable Mountain lacked standing to assert federal securities claims based on the Elkhorn Units because it was not the purchaser. (D.I. 26 at 4-6). In addition, because some courts have adopted a standing theory based on an express assignment of securities fraud claims (a theory that the Third Circuit has not yet expressly rejected), the Court recognized that Cable Mountain might be able to allege standing if there had

4

been such an express assignment. (*Id.* at 4-5). The current complaint, however, does not allege an express assignment. Instead, Plaintiffs appear to have abandoned any claim by Cable Mountain with respect to the Elkhorn Units by transferring the Units back to Keystone. (*See* D.I. 15 ¶ 22 (previous complaint stating that the Elkhorn Units were assigned to Cable Mountain); D.I. 28 ¶ 22 (current complaint stating that the Elkhorn Units are currently owned by the Lunts through Keystone)).

The return of the Elkhorn Units to Keystone, however, does not entirely solve Plaintiffs' problem. In order to state a claim for securities fraud, Keystone must show loss causation, *i.e.*, "a causal connection between the material misrepresentation and the loss." *McCabe*, 494 F.3d at 424. If a purchaser disposes of its shares "before the relevant truth begins to leak out, the misrepresentation will not have led to any loss." *McKowan Lowe & Co., Ltd. v. Jasmine, Ltd.*, 231 F. App'x 216, 218 n.2 (3d Cir. 2007) (quoting *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 343 (2005). Here, Keystone disposed of the Elkhorn Units before any alleged fraud was discovered by assigning those Units to Cable Mountain. As a result, Keystone could not suffer any loss from any discovery of an alleged misrepresentation.

Plaintiffs argue that Keystone did not technically "dispose of" the Elkhorn Units when it made a "temporary, internal book transfer" to its wholly-owned subsidiary Cable Mountain and, therefore, Keystone can still assert a claim based on its 2016 purchase of the Units. But the cases Plaintiffs cite in support are inapposite. (*See* D.I. 31 at 6-7). In each of those cases, the court addressed whether the transaction at issue was a "purchase or sale" within the meaning of § 10(b) and Rule 10b-5 and, therefore, governed by the Exchange Act; the court did not address the element of loss causation, which is the element Plaintiffs cannot show here. *See Int'l Controls Corp. v. Vesco*, 490 F.2d 1334, 1343 (2d Cir. 1974) (holding that a stock for stock exchange

between two subsidiaries was not a "purchase or sale" as required by § 10(b) and Rule 10b-5); *Rathborne v. Rathborne*, 683 F.2d 914, 918 (5th Cir. 1982) (holding that "a transfer of securities from a wholly controlled subsidiary to its parent or between two corporations wholly controlled by a third" did not satisfy the purchase or sale requirement of § 10(b) and Rule 10b-5).

Plaintiffs cite no cases showing that Keystone can adequately plead loss causation based on a decline in the value of the Elkhorn Units when those units were in the possession of a separate legal entity, and it is doubtful that such a case exists. "A basic tenet of American corporate law is that . . . [a] corporate parent which owns the shares of a subsidiary does not, for that reason alone, own or have legal title to the assets of the subsidiary." *Dole Food Co. v. Patrickson*, 538 U.S. 468, 474–75 (2003); *see also Birmingham v. Experian Info. Sols., Inc*., 633 F.3d 1006, 1018 (10th Cir. 2011) ("A subsidiary corporation is presumed to be a separate and distinct entity from its parent corporation."); *Institutional Laundry, Inc. v. Utah State Tax Comm'n*, 706 P.2d 1066, 1067 (Utah 1985) ("A corporation, be it parent or subsidiary, has its own legal identity and existence. Common ownership or control does not automatically destroy that separate identity.").

Plaintiffs also cannot assert a claim based on the purchase of the Elkhorn Units through the individual plaintiffs Larry Lunt and John Lunt. Plaintiffs argue that the Lunts have standing to assert a claim because "a plaintiff who invests in securities through an intermediate entity created to facilitate the investment is considered the actual purchaser of the securities." (D.I. 31 at 4). The cases Plaintiffs cite in support demonstrate the flaw in their theory. In *Grubb v. Federal Deposit Insurance Corp*., the individual plaintiff, Grubb, had standing to assert securities fraud claims against defendant First National even though Grubb's holding company, Weatherford Holding, technically purchased the securities because "First National made the alleged representations directly to Grubb *before* Weatherford Holding even existed, thus inducing him to . . . establish the

6

holding company" so that the holding company could complete the transaction. 868 F.2d 1151, 1161 (10th Cir. 1989) (emphasis added). The court in *Grubb* recognized that such a rule would not apply in a situation where, like here, "the company existed before its directors even looked into the possibility of buying the stock in question."[2] *Id*. at 1162.

Finally, Plaintiffs suggest that loss causation is adequately pleaded if the complaint alleges that the misrepresentations induced Plaintiffs to make an investment. (D.I. 31 at 14 (citing *EP Medsystems, Inc. v. EchoCath, Inc*., 235 F.3d 865, 869, 884 (3d Cir. 2000)). The Third Circuit, however, has rejected this argument. Under Rule 10b-5, "[a] plaintiff must show both: (1) 'transaction causation' (or 'reliance'), i.e., that but for the fraudulent misrepresentation or omission, the investor would not have purchased or sold the security; and (2) 'loss causation,' i.e., that the fraudulent misrepresentation or omission actually caused the economic loss suffered." *McCabe*, 494 F.3d at 425. "[B]y focusing only on whether the [Plaintiffs] were induced into the transaction by [Defendant's] alleged omissions, this argument impermissibly conflates loss causation with transaction causation, rendering the loss causation requirement meaningless." *Id.* at 429.

B. **The June 2016 Loan by Cable Mountain**

In connection with the previous motion to dismiss, the Court dismissed Cable Mountain's federal securities law claims based on the June 2016 loan because no statements were actually

---

[2] Cable Mountain does not fit within the *Grubb* rule because Cable Mountain was not "created for the sole purpose of facilitating" the Lunts' investment in Elkhorn, as evidenced by the fact that Keystone, not Cable Mountain, was the actual purchaser. *See Abbey v. 3F Therapeutics, Inc*., No. 06 CV 409(KMW), 2009 WL 4333819, at *7 (S.D.N.Y. Dec. 2, 2009) ("*Grubb* and other decisions based on comparable factual allegations support the principle that, where a holding company is created for the sole purpose of facilitating an individual's investment in a single company, the investor may be considered the actual purchaser for purposes of the . . . standing analysis.").

7

made to Cable Mountain.  (D.I. 26 at 6).  Cable Mountain's claims relied on alleged misrepresentations in a February 6, 2016 email, but Cable Mountain did not come into existence until three months after that email – on April 29, 2016.  "Plaintiffs cannot premise a fraud claim on statements that were not made to them."  (D.I. 26 at 6 (internal punctuation omitted) (quoting *Lycan v. Walters*, 904 F. Supp. 884, 897 (S.D. Ind. 1995)).

On the current motion to dismiss, Plaintiffs attempt to cure this flaw by alleging that "[t]he representations made by Fulton and Elkhorn on February 6, 2016 about the details of Elkhorn's financial agreement with Barclays were reaffirmed to John and Larry Lunt after April 29, 2016." (D.I. 28 ¶ 27).  This allegation, however, is insufficient to save Cable Mountain's claims because it fails to comply with Rule 9(b)'s particularity requirements.  Specifically, the second amended complaint fails to identify when any alleged reaffirmations were made, how they were made, where they were made, the specific contents of the allege reaffirmation, and by whom these alleged misrepresentations were made.  Cable Mountain's claim fails as a result.  *See Mosiman v. Madison Cos., LLC*, C.A. No. 17-1517-CFC, 2019 WL 203126, at *3 (D. Del. Jan. 15, 2019).

### C. The 2017 Loan by Keystone

Keystone fails to state a federal securities fraud claim based on its January 2017 loan to Elkhorn because the complaint does not adequately allege a material misrepresentation or omission.[3]  In order to state a 10b-5 claim, Plaintiffs must allege that Defendants made (i) any untrue statement of a material fact, or (ii) failed to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading.

---

[3]   If the claims based on the 2016 purchase of the Elkhorn Units and the 2016 loan by Cable Mountain had not already been dismissed for the reasons discussed above, the Court would have dismissed those claims for the same reasons given with respect to the 2017 loan by Keystone because all three claims depend on the same purported misrepresentation.

*Stoneridge Inv. Partners, LLC v. Sci.-Atlanta*, 552 U.S. 148, 156 (2008). Here, Plaintiffs argue that Defendants made both material misstatements and omissions in a February 6 email exchange. (D.I. 31 at 12).

In the February 6 email, John Lunt, acting on behalf of Keystone, asked "What options, warrants, or other arrangements with employees, owners, partners, or others could change that ownership [of Elkhorn]?" (D.I. 30-1, Ex. A at 1-2).[4] Fulton, as the CEO of Elkhorn, gave the following reply to which Phil Ziesemer, the CFO of Elkhorn, made edits:

> Two arrangements are in place 1) with Barclays, in exchange for providing a total of $5 mm in capital, $3 mm being 5 year interest only loan and remaining being an annual marketing agreement for $500,000 every ~~May~~ June through 2018 I believe, (Phil please confirm) We agreed to a 15% non-exercisable warrant to essentially provide a mark to market on the increased value of Elkhorn without actually owning equity, which is restricted under Dodd Frank. Thought is this would be valued once the firm ramps up, but not held long term 2) We have created participation units or Phantom Stock for employees that would not share in profits but benefit at a liquidity event only. The maximum amount of value would be 10%, only 3%, as I recall, has been distributed. The sooner we move on from being a start up the less likely these will be needed to encourage joining Elkhorn. The rest is correct.

(*Id.* (edits in the original)).

According to Plaintiffs, the above paragraph materially misrepresented that Barclays was providing Elkhorn $2,000,000 (*i.e.*, $500,000 each year for 4 years) in "guaranteed," or unconditional, money. (D.I. 28 ¶ 31). The above paragraph, however, neither expressly states nor implies that Barclays is providing Elkhorn $2,000,000 without any conditions. Indeed, it does the opposite. The paragraph states that Barclays is providing an "annual marketing agreement for $500,000 every [June] through 2018." (D.I. 30-1, Ex. A at 1-2). In other words, the statement itself discloses that the annual $500,000 is subject to an "agreement," and agreements by their

---

[4] The court may take judicial notice of the email on a motion to dismiss because it was a document incorporated into the complaint by reference. *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010).

9

nature contain several terms and conditions. Accordingly, Plaintiffs have not identified a material misstatement in the February 6 email.

Plaintiffs further allege that the February 6 email contained a material omission. Specifically, it failed to disclose that Elkhorn "did not have any realistic possibility" of meeting the condition required to receive the annual $500,000 payments, namely selling $100 million of Barclays products annually. (D.I. 28 ¶ 33). Non-disclosure of material information does not give rise to liability under §10 and Rule 10b-5 unless the defendant had an affirmative duty to disclose that information. *Oran v. Stafford*, 226 F.3d 275, 285 (3d Cir. 2000). A duty to disclose arises only when there is: (1) insider trading, (2) a statute requiring disclosure, or (3) a statement that would otherwise be "inaccurate, incomplete or misleading." *Id*. at 286. Plaintiffs proceed under the third prong. (D.I. 31 at 12-13).

"For an actionable claim of a misleading omission, the plaintiffs must show that the omitted information in fact existed at the time the statement was made." *In re NAHC, Inc. Sec. Litig*., No. Civ. A. 00-4020, 2001 WL 1241007, at *14 (E.D. Pa. Oct. 17, 2001). "The defendants are not obligated to predict future events unless there is reason to believe that they will occur." *Id*.; *In re Tempur Sealy Int'l, Inc. Sec. Litig*., 17-cv-2169 (LAK), 2019 WL 1368787, at *13 (S.D.N.Y. Mar. 26, 2019) ("[T]here is 'no duty to disclose predictions that are not substantially certain to hold.'" (quoting *In re Citigroup, Inc. Sec. Litig*., 330 F. Supp. 2d 367, 377 (S.D.N.Y. 2004)); *cf. In re Express Scripts Holdings Co. Sec. Litig*., 773 F. App'x 9, 13-14 (2d Cir. 2019) ("[Plaintiff] essentially argues that Defendants should have anticipated . . . that the negotiations would deteriorate, but in the circumstances here, where the discussions were ongoing, Defendants did not have a duty to disclose more about the uncertain state of the negotiations."). Plaintiffs' allegation

10

that Elkhorn knew it had no "realistic possibility" of selling $100 million of Barclays products annually is unsupported by any particularized facts, as required by Rule 9(b).

In addition, "it is not enough to allege that the statement is incomplete; rather, the plaintiff must state facts showing that, due to its incompleteness, the statement affirmatively led the plaintiff in a wrong direction." *In re Synchronoss Sec. Litig.*, 705 F. Supp. 2d 367, 419–20 (D.N.J. 2010). Keystone inquired about the ownership structure of Elkhorn, and Elkhorn responded that Barclays had a 15% non-exercisable warrant. To provide some context for why Elkhorn issued the warrant to Barclays, Elkhorn identified the consideration Barclays provided in exchange, which included an annual marketing agreement. In this context, the complaint does not allege a material omission that led plaintiff in the wrong direction about the question asked, which was about the ownership structure of Elkhorn. *See In re Anadigics, Inc., Sec. Litig.*, C.A. No. 08-5572 (MLC), 2011 WL 4594845, at *23 (D.N.J. Sept. 30, 2011) (finding no material omission because "[n]othing about the analyst's Intel question [regarding defendant's relationship with Intel] imposed a duty on [defendant] to disclose the Intel yield problem at that time"). Plaintiffs fail to adequately allege a material misrepresentation or omission in connection with Keystone's 2017 loan to Elkhorn, and thus fail to state a securities fraud claim pursuant to Rule 12(b)(6).

## IV.    CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss the second amended complaint (D.I. 29) is GRANTED. The second amended complaint (D.I. 28) is dismissed with prejudice. An appropriate order will be entered.